**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL ACTION** |
| | : | |
| v. | : | **NO. 21-255** |
| | : | |
| **DAVIT DAVITASHVILI** | : | |

## MEMORANDUM

**KEARNEY, J.**                                                                                                                           **April 28, 2022**

      Our grand jury charged Davit Davitashvili with transmitting text messages from abroad on May 10, 2020 containing a threat to injure his then-estranged wife Olga Volosevich and others in Philadelphia. Ms. Volosevich did not report the threats until a year later. The United States intends to offer evidence attributing her delay in reporting her husband's texts to her learning he intended to return to the Philadelphia area in Spring 2021. Mr. Davitashvili sees it differently; he may try to argue his texts did not violate the law and Ms. Volosevich only reported him in May 2021 after he began questioning her about their 2019 and 2020 joint tax returns and what she did with COVID stimulus payments. He also hopes to show possible misrepresentations in her immigration filings. Mr. Davitashvili now moves for leave to issue pretrial subpoenas to the Internal Revenue Service and Immigration Services seeking these records. The United States opposes the pretrial production, and Ms. Volosevich objects to the production of her personal information. We held two oral arguments and offered the parties the opportunity to present testimony. We deny Mr. Davitashvili leave to subpoena Ms. Volosevich's immigration records or to subpoena his tax records for pretrial production to the extent he cannot get them as his own records without a subpoena. We deny Ms. Volosevich's motion to quash the production of tax records at trial.

### I. Background

Davit Davitashvili married Olga Volosevich in 2016. The two resided in Philadelphia until 2019. Ms. Volosevich claims Mr. Davitashvili verbally and physically abused her during their marriage. In fall 2019, Ms. Volosevich moved out of their apartment and demanded a divorce. Mr. Davitashvili returned to his native country–the Republic of Georgia–shortly after. The two communicated via instant messaging applications, including Viber, during his time in Georgia.[1] Those messages range from the nonsensical thoughts, at least from our perspective understanding we have limited context at this stage, to ambiguous statements from Mr. Davitashvili which the United States characterizes as abusive and threatening and less ambiguous statements from Ms. Volosevich about her perception of abuse.

This case addresses one chain of messages the two exchanged on May 10, 2020. Mr. Davitashvili allegedly messaged Ms. Volosevich on Viber telling her he would rape her mother,[2] put her in a wheelchair, and kill others.[3] Ms. Volosevich blocked Mr. Davitashvili on Viber at the end of May 2020. Ms. Volosevich did not report this May 10, 2020 conduct for another year.

But the two communicated over other messaging applications such as Facebook Messenger in June 2020 before Mr. Davitashvili blocked Ms. Volosevich for bringing up divorce. The two did not talk again until February 2021 when Mr. Davitashvili contacted Ms. Volosevich using a different Facebook account. In April 2021, Mr. Davitashvili asked Ms. Volosevich if she filed her tax returns as "married filing jointly" in 2019 and 2020 and collected COVID-19 stimulus payments when they separated and he lived in Georgia. Ms. Volosevich did not provide a "straight answer." In May 2021, Ms. Volosevich filed a complaint with the FBI about Mr. Davitashvili's messages from May 10, 2020.

Mr. Davitashvili returned to the United States from Georgia in June 2021. The FBI arrested Mr. Davitashvili upon his arrival for threatening to injure Ms. Volosevich, her mother, and various other unidentified individuals in the May 10, 2020 messages. Our grand jury indicted Mr. Davitashvili for one count of transmitting a communication containing a threat to injure or kidnap in interstate or foreign commerce in violation of 18 U.S.C. § 875(c).[4] We proceed to trial on June 15, 2022.[5]

## II.     Analysis

Mr. Davitashvili now moves under Federal Rule of Evidence 17(c) for leave to subpoena: (1) the Internal Revenue Service for Ms. Volosevich's 2019 and 2020 tax returns, records of the COVID-19 Economic Impact Stimulus payments made to Ms. Volosevich, and bank account information where the COVID-19 payment deposited if no hard check issued; and (2) the United States Citizenship and Immigration Service for Ms. Volosevich's immigration "A-File."[6] The United States and Ms. Volosevich oppose both motions.[7]

Federal Rule of Criminal Procedure 17(c) provides: "A subpoena may order the witness to produce any books, papers, documents, data, or other objects the subpoena designates. The court may direct the witness to produce the designated items in court before trial or before they are to be offered in evidence. When the items arrive, the court may permit the parties and their attorneys to inspect all or part of them."[8] "Rule 17 first creates a general rule: Subpoenas are issued without the court's involvement when they command the recipient's presence and possibly the production of documents at a particular hearing . . . [and] Rule 17(c) creates a limited exception to this rule, declaring that 'the court may direct the witness to produce the designated items in court *before trial or before they are to be offered in evidence*.'"[9] And Rule 17(c)(3) creates an exception

requiring a court order when the subpoena seeks a victim's confidential information.[10] Both exceptions are implicated here.

Our Supreme Court instructs "'any document or other materials, admissible as evidence' is subject to subpoena under [Rule 17(c)]."[11] "The test for enforcement is whether the subpoena constitutes a good faith effort to obtain identified evidence rather than a general 'fishing expedition' that attempts to use the rule as a discovery device."[12] The party seeking production bears the burden of proof.[13] The proponent must clear three hurdles: relevancy, admissibility, and specificity, to meet his burden.[14] But Rule 17(c) is not "intended to provide a means of discovery for criminal cases"; rather, "its chief innovation [is] to expedite the trial by providing a time and place before trial for the inspection of subpoenaed materials."[15] "Indeed, 'courts must be careful that [a] Rule 17(c) [subpoena] is not turned into a broad discovery device, thereby undercutting the strict limitation of discovery in criminal cases found in Fed. R. Crim. P. 16.' Thus, although a defendant's subpoena may be motivated only by the venerable principle of 'nothing ventured, nothing gained,' more is needed to sustain a subpoena than the defendant's own subjective belief (i.e., hope) that he or she may find something useful by casting a subpoena upon the waters."[16]

And just because the "requested material may be evidentiary and subject to subpoena at trial under *Bowman* does not mean that the party seeking production is automatically entitled to pretrial production and inspection."[17] Rather, the party must satisfy the *Nixon* factors: "[t]o obtain pretrial production and inspection of unprivileged materials from a third party witness, a party must show: (1) that the documents are evidentiary and relevant; (2) that they are not otherwise procurable reasonably in advance of trial by exercise of due diligence; (3) that the party cannot properly prepare for trial without such production and inspection in advance of trial and that the

failure to obtain such inspection may tend unreasonably to delay the trial; and (4) that the application is made in good faith and is not intended as a general 'fishing expedition.'"[18]

Mr. Davitashvili seeks an Order permitting him to issue two subpoenas returnable before trial. We begin with Mr. Davitashvili's request for Ms. Volosevich's immigration file and then turn to his request for the documents from the IRS. We find Mr. Davitashvili is not entitled to subpoena Ms. Volosevich's immigration "A-file" because his request for the subpoena is based on a "mere hope" he may find something relevant and exculpatory. Mr. Davitashvili is entitled to subpoena the IRS for: (1) his 2019 and 2020 tax returns returnable at trial to the extent he does not obtain them through a request for his own records as we now know Ms. Volosevich jointly filed on his behalf allegedly without his consent or signature, (2) any COVID-19 stimulus checks made out in his name which Ms. Volosevich may have signed and deposited or cashed allegedly without his knowledge or consent, and (3) if a hard check did not issue for the stimulus payments in Mr. Davitashvili's name, the bank account information on file where the money directly deposited, including confirmation of any deposit(s).

**A. Mr. Davitashvili fails to meet his burden to show his subpoena for Ms. Volosevich's immigration file is based on something more than a mere hope he will find relevant, exculpatory information.**

Mr. Davitashvili moves us to permit him to issue a subpoena to the United States Citizenship and Immigration Service returnable before trial for Ms. Volosevich's immigration "A-file." We find Mr. Davitashvili is not entitled to subpoena Ms. Volosevich's immigration "A-file" because his request for the subpoena is based on a "mere hope" he may find something relevant and exculpatory and is thus a "fishing expedition" for discovery rather than a request for identifiable, relevant evidence.

Mr. Davitashvili tells us Ms. Volosevich is not a United States citizen, but she has applied to become one. He does not tell us when she did so. The United States informs us Ms. Volosevich became a citizen in 2022. Mr. Davitashvili argues he is entitled to issue this subpoena and obtain this information before trial because "[i]f Ms. Volosevich violated tax and fraud statutes in the filing of joint tax returns and then kept the stimulus payment(s) for herself, there exists a strong likelihood that she also committed acts of dishonesty and possibly even criminal acts in the filing of her citizenship application. Most relevant citizenship documents require the applicant to attest that they have not committed any crimes and ask other moral character-related questions. If Ms. Volosevich committed tax fraud of some kind, there exists a strong likelihood that she went on to lie about it on her citizenship forms."[19] He continues: "The defense has made a good faith showing that there may be evidence that will prove Ms. Volosevich used her estranged husband's earnings to file tax returns and then kept any refunds or stimulus payments solely for her own use. It stands to reason that if she did commit such dishonest conduct, she did not report it to USCIS on her citizenship application forms or in subsequent in-person interviews she attended, if any."[20]

In essence, Mr. Davitashvili is asking us to permit him to subpoena Ms. Volosevich's immigration "A-File" because she *may* have committed tax fraud, and because she lied on her taxes, she *probably* lied on her immigration application by not disclosing this un-charged crime. Putting aside the issue of Mr. Davitashvili's propensity-laden reasoning for why he believes Ms. Volosevich may have lied on her immigration application, Mr. Davitashvili also does not know when Ms. Volosevich applied for citizenship. Thus he does not even know if she would have been required to answer any question about alleged uncharged crimes affirmatively. Mr. Davitashvili is taking a shot in the dark to obtain any sort of exculpatory evidence to impeach Ms. Volosevich with on cross-examination. He is merely using this subpoena as a discovery tool. "The 'mere hope

6

that some exculpatory material might turn up' is not a sufficient basis for a subpoena."[21] We deny Mr. Davitashvili's motion to subpoena Ms. Volosevich's immigration A-file because he fails to meet his burden to show the material sought is the proper subject of a Rule 17(c) subpoena.

**B. Mr. Davitashvili may not subpoena the production of the IRS records before trial under Rule 17(c) but may subpoena the records for production at trial.**

We turn to whether Mr. Davitashvili is entitled to subpoena various documents from the IRS for review before trial under Rule 17(c) and the *Nixon* factors.

**1. The tax returns and stimulus information are evidentiary and relevant.**

Mr. Davitashvili provided no written argument as to the admissibility of this evidence in his opening brief. We inquired how these records are admissible at oral argument.[22] Mr. Davitashvili contends these records are admissible as substantive evidence under Federal Rule of Evidence 404(b)(2) because they prove Ms. Volosevich's motive to file a criminal complaint against Mr. Davitashvili one year after he sent the allegedly threatening messages to her.[23] Mr. Davitashvili provides a similar argument in his response to Ms. Volosevich's Motion to quash, arguing the evidence proves Ms. Volosevich's motive for filing a criminal complaint and her bias towards him, and is admissible as other acts evidence under Rule 404(b).[24]

The United States countered at oral argument these records are not admissible under Rule 404(b) because even if the records go to Ms. Volosevich's motive to turn Mr. Davitashvili into police, her motive for filing a criminal complaint in May 2021 is not relevant to whether Mr. Davitashvili transmitted a communication containing a threat a year earlier to Ms. Volosevich.[25] The United States also contends even if we find the evidence slightly relevant, Rule 403 warrants exclusion.[26] The United States concedes the information is relevant impeachment evidence under Rule 608(b).[27] But the United States argues under Rule 608(b) Mr. Davitashvili may only inquire about whether Ms. Volosevich filed the tax returns jointly and whether she cashed any stimulus

checks in Mr. Davitashvili's name on cross examination; Mr. Davitashvili may not admit extrinsic evidence regarding the same. We address the arguments in turn.

We disagree with the United States Ms. Volosevich's motive and bias for filing a criminal complaint about Mr. Davitashvili are irrelevant in this case.[28] First, the United States moved to admit Mr. Davitashvili's messages to an individual named Roma to prove Ms. Volosevich turned Mr. Davitashvili into authorities a year after the May 2020 messages because she became "alarmed" and "her concerns became heightened" after Roma showed her messages from Mr. Davitashvili.[29] The United States cannot argue Ms. Volosevich's motive for reporting Mr. Davitashvili is irrelevant on one hand and on the other argue it is relevant to provide background, context, and "complete the story" in its case-in-chief. Second, this evidence goes to Ms. Volosevich's bias and credibility as a witness which is wholly relevant here.[30] We find the evidence Mr. Davitashvili seeks relevant.[31]

We also disagree with the United States Rule 403 counsels us to exclude the evidence. Rule 403 requires we exclude evidence when the probative value is substantially outweighed by a danger of unfair prejudice, confusing the issues, or misleading the jury. The United States put Ms. Volosevich's motive at issue in this case. Thus, Mr. Davitashvili's evidence to counter Ms. Volosevich's motive is highly relevant. And as the complaining witness in this case, her bias towards Mr. Davitashvili is also wholly relevant. We do not find the probative value here is substantially outweighed by any risk of confusing the issues, misleading the jury, or wasting time. To rebut the United States' theory of why Ms. Volosevich waited a year to report Mr. Davitashvili to authorities or to show her bias, the jury need not decide whether Ms. Volosevich actually committed tax fraud or some other type of fraud by filing joint tax returns or depositing Mr. Davitashvili's stimulus check in her account to the extent she did so. The jury need only weigh

whether Ms. Volosevich had concerns about the tax returns and stimulus check in light of Mr. Davitashvili's inquiry to her at or near the time she turned him in. Thus, the jury may conclude Ms. Volosevich turned Mr. Davitashvili in because she feared Mr. Davitashvili would report her for a potential crime, not because she feared Mr. Davitashvili due to his messages to Roma. We cannot find on the information before us Rule 403 requires us to exclude this evidence.

Mr. Davitashvili demonstrates he intends to offer this evidence for a proper purpose under Rule 404(b), the evidence is relevant to the proper purpose with no propensity inference, and it satisfies the Rule 403 balancing test.[32] We find the IRS records sought admissible under Rule 404(b) based on the record before us.

We also analyze the United States' argument regarding Rule 608(b). We agree with the United States this evidence is wholly relevant as impeachment evidence under Rule 608(b). Of course whether Ms. Volosevich lied on her tax returns, forged Mr. Davitashvili's signature, and possibly kept a stimulus check issued in his name is relevant to her credibility as a witness. And we agree Mr. Davitashvili may not introduce extrinsic evidence under Rule 608(b).[33] But this does not end our inquiry. If Ms. Volosevich testifies she did not file joint tax returns, Mr. Davitashvili may seek admission of the sworn tax return submitted under penalty of perjury to the IRS indicating she intended to, and did in fact, file a joint tax return as a prior inconsistent statement.[34] Thus, while not admissible under Rule 608(b), the tax returns may be admissible under Rule 613.[35] But ultimately the United States may not pigeon hole Mr. Davitashvili into using the evidence in this way. Mr. Davitashvili demonstrates the evidence is relevant and admissible to prove bias and motive under Rule 404(b).

Mr. Davitashvili satisfies the first *Nixon* prong because the evidence sought is evidentiary and relevant, and thus also satisfies the threshold Rule 17(c) requirements.[36] We find the tax returns

9

and stimulus payment information admissible as substantive evidence under Rule 404(b). And we also find the tax returns possibly admissible as impeachment evidence as a prior inconsistent statement under Rule 613 depending on Ms. Volosevich's testimony.[37]

### 2. Mr. Davitashvili fails to show the documents are not otherwise procurable reasonably in advance of trial by the exercise of due diligence.

Mr. Davitashvili must show he cannot otherwise obtain the material reasonably in advance of trial by the exercise of due diligence to satisfy prong two of the *Nixon* test. He fails to make this showing, and thus fails to show he is entitled to this material before trial.

We now know Ms. Volosevich filed joint tax returns in 2019 and 2020. We also now know Mr. Davitashvili tried and failed to retrieve copies of *Ms. Volosevich's* tax returns and stimulus payment information after the IRS informed Mr. Davitashvili's counsel it needed a subpoena to release the information. But Mr. Davitashvili made such a request *before* we knew for certain Ms. Volosevich filed joint tax returns in 2019 and 2020. Mr. Davitashvili clarified at our last hearing he never attempted to retrieve his *own* tax returns in *his name* from the IRS.[38] And based on our own review, we see no reason Mr. Davitashvili cannot obtain a copy of his own tax return records.[39] Mr. Davitashvili also made no showing of his attempts to retrieve information about any stimulus payments issued in his name from the IRS.[40] Mere inaction in attempting to procure this information by other means –which is specific to Mr. Davitashvili himself–does not satisfy us the information is not otherwise procurable with the exercise of due diligence.[41] Because Mr. Davitashvili is seeking information in his own name–*i.e.* his own tax returns for 2019 and 2020, any COVID-19 stimulus checks issued in his name, and any bank account information where the stimulus checks directly deposited in the event actual checks did not issue–and has provided no indication he tried *and failed* to obtain this information directly from the IRS, he fails to meet this

prong of the *Nixon* factors. He is not entitled to subpoena these materials for pretrial disclosure under Rule 17(c).[42]

### 3. We grant Mr. Davitashvili leave to issue a subpoena for his records from the IRS but not the immigration file returnable at trial.

Mr. Davitashvili could subpoena the IRS records relating to Ms. Volosevich returnable at trial under Rule 17(c)(1).[43] But because Mr. Davitashvili's motions sought subpoenas involving Ms. Volosevich's personal information after the indictment, Rule 17(c)(3) requires an Order to issue the subpoena to the IRS after we provide Ms. Volosevich with an opportunity to object. We provided her an opportunity to object at our April 13, 2022 hearing and through supplemental briefing.[44]

Ms. Volosevich moves to quash the as-yet unissued subpoenas[45] because: (1) the tax returns are obtainable without a Rule 17(c) subpoena; (2) she did not improperly keep the stimulus money because Mr. Davitashvili failed to request it in their divorce proceedings; (3) his subpoenas amount to fishing expeditions; and (4) the Privacy Act prevents disclosure of Ms. Volosevich's immigration records.[46] We deny Ms. Volosevich's motion and grant Mr. Davitashvili leave to issue a subpoena for the IRS records relating to their tax information returnable at trial to the extent the IRS does not turn them over before trial in response to his request for his own records.

Rule 17(c)(3) provides: "After a complaint, indictment, or information is filed, a subpoena requiring the production of personal and confidential information about a victim may be served on a third party only by court order. Before entering the order and unless there are exceptional circumstances, the court must require giving notice to the victim so that the victim can move to quash or modify the subpoena or otherwise object."[47]

First, for the reasons previously set forth, we deny Mr. Davitashvili's motion to subpoena Ms. Volosevich's immigration "A-File" because it is a fishing expedition based on a mere hope of

11

finding exculpatory information. We appreciate Ms. Volosevich's objection based partially on this ground. But we independently find Mr. Davitashvili fails to show this subpoena is appropriate under Rule 17(c), irrespective of whether it is returnable at trial or pretrial, and thus deny his motion to subpoena Ms. Volosevich's A-file because he fails to meet the threshold requirements of Rule 17(c).

Second, as shown at length, Mr. Davitashvili offers a relevant, evidentiary purpose for the tax returns and stimulus payments under Rule 404(b), and the tax returns as admissible impeachment evidence. Mr. Davitashvili is merely seeking his own tax returns and information as to his own stimulus payments, which we cannot conceivably find a reason to deny him access to based on Ms. Volosevich's objection about her own personal information or the stimulus check being marital property which Mr. Davitashvili should have raised in their divorce proceeding. Ms. Volosevich filed the tax returns jointly as she admitted to counsel for the United States. It is less clear what happened to the stimulus checks, if any issued to Mr. Davitashvili, but we cannot preclude him from seeking *his own* information based on Ms. Volosevich's objection. The United States will be afforded the opportunity to rehabilitate Ms. Volosevich on redirect to the extent necessary, including along the lines of Ms. Volosevich's argument she kept the stimulus checks as marital property. This argument, though, does not change our analysis about the evidentiary nature of the documents sought from the IRS at this stage.

We are unpersuaded Mr. Davitashvili should be prevented from subpoenaing the IRS for his records with a Rule 17 subpoena returnable at trial, which may be necessary and advisable since it is unclear whether the IRS will comply with Mr. Davitashvili's request for his documents before our trial date in June.[48] Mr. Davitashvili may issue a subpoena returnable at trial to the IRS for his 2019 and 2020 tax returns, any COVID-19 stimulus checks made out in his name, and if a

hard check did not issue for the stimulus payments in Mr. Davitashvili's name, the bank account information on file where his stimulus money directly deposited, including any confirmation of the direct deposit(s) made. But for the reasons already stated, he may not seek pretrial production of the records because he fails to satisfy prong two of the *Nixon* factors.

### III. Conclusion

We deny Mr. Davitashvili's Motion seeking leave to subpoena Ms. Volosevich's immigration file. We deny Mr. Davitashvili's Motion seeking leave to subpoena the Internal Revenue Service for tax information returnable before trial. We deny Ms. Volosevich's Motion to quash and grant Mr. Davitashvili leave to subpoena the requested tax and bank records (if necessary) for the beginning of trial.

---

[1] The United States tells us Viber is an "Internet messaging application[] that allow[s] the user to send and receive audio calls, video calls, written messages, photos, and videos after downloading the software from the Internet." ECF Doc. No. 43 at 7 n.2.

[2] Defense counsel suggested this allegation in the Complaint (ECF Doc. No. 1) and Indictment (ECF Doc. No. 9) is the result of a mistranslation of Mr. Davitashvili's message. The United States informed us at oral argument it intends to obtain a superseding indictment removing this language from the charged conduct.

[3] *See, e.g.*, ECF Doc. Nos. 1, 9.

[4] ECF Doc. No. 9.

[5] ECF Doc. No. 62 (granting oral motion for a continuance by Mr. Davitashvili with no objection from the United States).

[6] ECF Doc. Nos. 51, 53. An "A-File" is a short-hand reference to "Alien File," which is "'the file maintained by various government agencies for each alien on record' and may include identifying documents such as a 'passport, driver's license, other identification cards, and photographs,' as well as 'immigration history … and all documents and transactions relating to the alien.'" *Escobar-Lopez v. Att'y Gen. of the United States*, 831 F. App'x 614, 617 (3d Cir. 2020); *United States v. de Jesus-Concepcion*, 652 F. App'x 134, 139 n.2 (3d Cir. 2016) (quoting *Dent v. Holder*, 627 F.3d 365, 368 (9th Cir. 2010)).

[7] ECF Doc. Nos. 57, 71, 75.

---

[8] Fed. R. Crim. P. 17(c)(1).

[9] *United States v. Vo*, 78 F. Supp. 3d 171, 178 (D.D.C. 2015) (emphasis added); *see also* 2 Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure Criminal § 275 (4th ed. 2022).

[10] Fed. R. Crim. P. 17(c)(3).

[11] *United States v. Cuthbertson*, 630 F.2d 139, 144 (3d Cir. 1980) (discussing *Bowman Dairy Co. v. United States*, 341 U.S. 214, 221 (1951)).

[12] *Id.* (citing *Bowman*, 341 U.S. at 220–21).

[13] *United States v. Brown*, No. 11-193, 2012 WL 1655733, at *1 (W.D. Pa. May 10, 2012) ("Whether presented to the court as a request for quashal or issuance of a subpoena, the burden is on the party seeking the subpoena duces tecum to show that he or she is entitled to production of the evidentiary objects which are the subject of the subpoena."); *see also United States v. Mills,* No. 17-122, 2018 WL 1382647, at *3 (W.D. Pa. Mar. 19, 2018) (same); *United States v. Merlino*, No. 99-0363, 2001 WL 283165, at *6 (E.D. Pa. Mar. 19, 2001) (same).

[14] *United States v. Nixon*, 418 U.S. 683, 699 (1974).

[15] *Id.* at 698–99 (footnote omitted) (citing *Bowman*, 341 U.S. at 220); *see also Cuthbertson*, 630 F.2d at 144 ("[R]ule 17 is designed as an aid for obtaining relevant evidentiary material that the moving party may use at trial.") (further citations omitted).

[16] *United States v. Eisenhart*, 43 F. App'x 500, 505 (3d Cir. 2002) (quoting *Cuthbertson*, 630 F.2d at 146); *see also Mills*, 2018 WL 1382647, at *3 (quoting *Eisenhart*, 43 F. App'x at 505).

[17] *Cuthbertson*, 630 F.2d at 145; *see also United States v. Hall,* No. 20-340, 2021 WL 3419679, at *1 (W.D. Pa. Aug. 5, 2021) (detailing Rule 17(c) test and additional requirements when party seeks documents pretrial); *Vo*, 78 F. Supp. 3d at 178; Wright & Miller, *supra*, § 275.

[18] *United States v. Cuthbertson*, 651 F.2d 189, 192 (3d Cir. 1981) (quoting *Cuthbertson*, 630 F.2d at 145) (quoting *Nixon*, 418 U.S. at 699–700)).

[19] ECF Doc. No. 53 at 7.

[20] ECF Doc. No. 53 at 14.

[21] *Cuthbertson,* 630 F.2d at 146 ("At oral argument before the district court, counsel for the defendants admitted that they did not know whether the statements of the franchisees and potential franchisees contained any exculpatory information. Thus, the defendants' broad request, which was only slightly limited by the district court, was based solely on the mere hope that some exculpatory material might turn up. We do not think that this 'mere hope' justifies enforcement of a subpoena under rule 17(c)."); *see also United States v. Totoro*, No. 15-291, 2017 WL 3189216,

at *18 (E.D. Pa. July 27, 2017) (quoting *Cuthbertson*, 630 F.2d at 146); *United States v. Crews*, No. 10-663-4, 2012 WL 93176, at *4 (E.D. Pa. Jan. 12, 2012) ("Moreover, 'Defendant has made no showing other than a belief or hope that the [materials] contain useful evidence. Defendant is clearly searching for useful information, not seeking to secure specific admissible evidence.' . . . The 'mere hope that some exculpatory material might turn up' is not a sufficient basis for the issuance of a subpoena pursuant to Rule 17(c).") (internal and further citations omitted); *United States v. Krall*, No. 07-607-01, 2009 WL 2394288, at *6 (E.D. Pa. Aug. 4, 2009) ("Defendant has made no showing other than a belief or hope that the documents contain useful evidence. Defendant is clearly searching for useful information, not seeking to secure specific admissible evidence.").

[22] *Cuthbertson*, 651 F.2d at 195 ("[N]aked exculpatory material held by third parties that does not rise to the dignity of admissible evidence simply is not within the rule.").

[23] Federal Rule of Evidence 404(b) provides:

> **(b) Other Crimes, Wrongs, or Acts.**
>
>> **(1) Prohibited Uses.** Evidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.
>>
>> **(2) Permitted Uses.** This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident.

[24] ECF Doc. No. 73 at 7–10.

[25] Federal Rule of Evidence 401 provides:

> Evidence is relevant if:
>
> **(a)** it has any tendency to make a fact more or less probable than it would be without the evidence; and
>
> **(b)** the fact is of consequence in determining the action.

[26] Federal Rule of Evidence 403 provides:

> The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.

[27] Federal Rule of Evidence 608(b) provides:

> **(b) Specific instances of conduct.** Except for a criminal conviction under Rule 609, extrinsic evidence is not admissible to prove specific instances of a witness's conduct in order to attack or support the witness's character for truthfulness. But the court may, on cross-examination, allow them to be inquired into if they are probative of the character for truthfulness or untruthfulness of:
>   (1) the witness; or
>   (2) another witness whose character the witness being cross-examined has testified about.

[28] The United States must prove beyond a reasonable doubt on May 10, 2020 Mr. Davitashvili: (1) knowingly transmitted a communication; (2) containing a threat to kidnap or injure a person or group of people; (3) for the purpose of making a threat or knowing the communication would be viewed by Ms. Volosevich as a threat, *i.e.* he acted with intent to threaten; and, (4) in interstate or foreign commerce. 18 U.S.C. § 875(c); *Elonis v. United States*, 575 U.S. 723, 737, 741 (2015); *United States v. Elonis*, 841 F.3d 589, 596 (3d Cir. 2016); *United States v. C.S.*, 968 F.3d 237, 244–46 (3d Cir. 2020). Whether the communication contains a threat is an objective standard. *Elonis*, 841 F.3d at 596–97 ("The Government must also satisfy the objective component, which requires it to prove beyond a reasonable doubt that the defendant transmitted a communication that a reasonable person would view as a threat. The objective component of Section 875(c) shields individuals from culpability for communications that are not threatening to a reasonable person, distinguishing true threats from hyperbole, satire, or humor. It requires the jury to consider the context and circumstances in which a communication was made to determine whether a reasonable person would consider the communication to be a serious expression of an intent to inflict bodily injury on an individual.") (internal citations omitted); *see also C.S.*, 968 F.3d at 244.

[29] ECF Doc. No. 69, Transcript (Tr.), Apr. 13, 2022, at 43:7–24, 47:17–21, 48:9–17.

[30] *United States v. Green*, 617 F.3d 233, 251 (3d Cir. 2010) ("'Proof of bias is almost always relevant,' because a 'showing of bias on the part of a witness would have a tendency to make the facts to which he testified less probable in the eyes of the jury than it would be without such testimony.'") (quoting *United States v. Werme*, 939 F.2d 108, 114 (3d Cir. 1991) and *United States v. Abel*, 469 U.S. 45, 49 (1984)).

[31] Mr. Davitashvili also argues in his opening brief, though, the information is relevant to whether Ms. Volosevich perceived Mr. Davitashvili's words as a threat, which goes to whether Mr. Davitashvili subjectively intended to threaten Ms. Volosevich. ECF Doc. No. 51 at 9; ECF Doc. No. 53 at 9. We of course agree this evidence is relevant to show whether Ms. Volosevich perceived Mr. Davitashvili's message as a threat considering the time it took her to report this message to police, and the timing of events leading to her reporting it. But, whether the message contained a threat is an objective standard, and whether Mr. Davitashvili intended to threaten her does not require a finding Ms. Volosevich actually perceived the communication as a threat; it requires a finding he had knowledge Ms. Volosevich would perceive the communication as a threat at the time he made the communication. Mr. Davitashvili does not provide us, and we cannot find, a link to find the tax returns and stimulus check records relevant to the objective or subjective elements of the charge more or less probable.

---

[32] *United States v. Repak*, 852 F.3d 230, 241 (3d Cir. 2017) (further citations omitted) (setting forth four-step analysis for admission of evidence under Rule 404(b)). The United States did not request a limiting instruction–step four of the analysis. If requested, we will provide one to the jury.

[33] Fed. R. Evid. 608(b); *see also Brown*, 2012 WL 1655733, at *2.

[34] Fed. R. Evid. 613(b). Rule 613(b) provides: "Extrinsic evidence of a witness's prior inconsistent statement is admissible only if the witness is given an opportunity to explain or deny the statement and an adverse party is given an opportunity to examine the witness about it, or if justice so requires. This subdivision (b) does not apply to an opposing party's statement under Rule 801(d)(2)." *See also United States v. Blue,* 340 F. Supp. 3d 862, 871 (D.S.D. 2018) (permitting pretrial *in camera* inspection of prior inconsistent statements which may be admissible under Federal Rule of Evidence 613(b) if the witness testifies inconsistently); *United States v. Skelos*, No. 15-317, 2018 WL 2254538, at *2 (S.D.N.Y. May 17, 2018), *aff'd*, 988 F.3d 645 (2d Cir. 2021) ("Documents bearing on a witness's decision to 'cooperate with the government' or any bias towards the defendant, however, can be proper subjects of a Rule 17(c) motion because those types of documents may themselves be admissible into evidence . . . Similarly, documents containing prior statements of a witness that are inconsistent with that witness's testimony at trial can be admissible under Federal Rule of Evidence 613, and so can be the proper subject of a Rule 17(c) subpoena.") (further citation omitted); *United States v. Ferguson*, No. 06-137, 2007 WL 4577303, at *2 (D. Conn. Dec. 26, 2007) (discussing contours of Federal Rule of Evidence 613).

[35] We note Mr. Davitashvili may need to overcome a potential hearsay objection from the United States at trial to admit these into evidence should he choose to do so. *See, e.g.*, Fed. R. Evid. 803(6). The United States does not offer such an objection in its response to Mr. Davitashvili's motion.

[36] Mr. Davitashvili must also show his Rule 17(c) subpoena meets the specificity requirement. There is no specificity objection from the United States. We nevertheless conclude independently Mr. Davitashvili's limited request for specific, relevant documents satisfies the specificity requirement and is not a fishing expedition premised on a mere hope to find useful information.

[37] It is well-settled while impeachment evidence may meet the "evidentiary" standard in *Bowman*, impeachment evidence does not "ripen into evidentiary material for purposes of impeachment" until "the witness testifies at trial." *Cuthbertson*, 630 F.2d at 144; *see also Crews,* 2012 WL 93176, at *2) ("Moreover, while documents to be used for the impeachment of a government witness may be subject to subpoena pursuant to Rule 17(c), they are not ordinarily subject to pre-trial production."). Therefore, impeachment evidence is generally "not subject to production and inspection by the moving party prior to trial." *Cuthbertson*, 630 F.2d at 144.

[38] ECF Doc. No. 69, Tr., at 18:1–7. He now tells us he made the request but is unsure when it will be fulfilled and if he will receive the requested documents before our June trial. *See* ECF Doc. No. 73 at 3.

[39] *See, e.g.*, Internal Revenue Service, Form 4056 https://www.irs.gov/pub/irs-pdf/f4506.pdf?ts=1643530177203 (last visited Apr. 21, 2022) (providing "Copies of jointly filed tax returns may be furnished to either spouse. Only one signature is required.").

---

[40] *See, e.g.*, Internal Revenue Service, *Economic Impact Payments*, https://www.irs.gov/coronavirus/economic-impact-payments (last visited Apr. 21, 2022).

[41] *See, e.g.*, *United States v. Bank*, No. 17-126, 2019 WL 1510324, at *3 (E.D. Va. Apr. 5, 2019) (finding defendant made no attempt to obtain documents and "inaction is obviously insufficient") (internal quotation and further citation omitted).

[42] We also note Mr. Davitashvili argues this material may be *Brady* or *Giglio* material, and the United States counters it is not. *See Brady v. Maryland*, 373 U.S. 83 (1963); *Giglio v. United States*, 405 U.S. 150, 154 (1972). But if this material constitutes *Brady* or *Giglio* material, this wholly cuts against Mr. Davitashvili's argument the documents are not otherwise procurable without a Rule 17(c) subpoena returnable before trial. *Cuthbertson*, 651 F.2d at 195 ("We believe that the basic error of the district court in its discussion of the statements' potential lay in its failure to discriminate between potential exculpatory material in the possession of the prosecution, generally available under the teachings of *Brady v. Maryland*, and exculpatory evidence in the possession of third parties. Only the latter is retrievable under a rule 17(c) subpoena; naked exculpatory material held by third parties that does not rise to the dignity of admissible evidence simply is not within the rule. That is the teaching of *Bowman Dairy* and *Nixon*, and we applied it in *Cuthbertson I*."); *see also United States v. Walker,* No. 05-440-11, 2008 WL 5002937, at *4 (E.D. Pa. Nov. 24, 2008); *Bank*, 2019 WL 1510324, at *3.

Because we find Mr. Davitashvili fails this prong regardless of whether this material qualifies as *Brady* or *Giglio*, and Mr. Davitashvili has not moved to compel the United States' production of this material under *Brady* or *Giglio*, we decline to issue an advisory opinion about whether this material falls within their ambit. We note, though, should Mr. Davitashvili file such a motion he will need to demonstrate the information sought is in the actual or constructive possession of the United States as required by the teachings of our Court of Appeals. *See, e.g.*, *United States v. Reyeros*, 537 F.3d 270 (3d Cir. 2008); *United States v. Risha,* 445 F.3d 298, 303 (3d Cir. 2006); *United States v. Pelullo*, 399 F.3d 197, 209 (3d Cir. 2005); *United States v. Merlino,* 349 F.3d 144, 154 (3d Cir. 2003); *United States v. Joseph*, 996 F.2d 36, 39 (3d Cir. 1993).

[43] *See, e.g.*, *Vo*, 78 F. Supp. 3d at 178; Wright & Miller, *supra*, § 275.

[44] *See, e.g.*, ECF Doc. Nos. 67, 69 (hearing transcript), 71.

[45] We note Mr. Davitashvili has not yet issued the subpoenas because Mr. Davitashvili requires a court order to (1) issue a subpoena returnable before trial, and (2) even if the subpoena is returnable at trial, in light of Rule 17(c)(3)'s requirement we must issue an order issue when the subpoena relates to a witness's confidential information.

[46] We raised, and Ms. Volosevich addresses, whether she has standing to object to these subpoenas. Rule 17(c)(3) specifically provides a victim whose confidential information is sought may move to quash the subpoenas. All parties agreed the subpoenas implicate Rule 17(c)(3), and both Mr. Davitashvili and the United States agreed Ms. Volosevich needed to be appointed counsel to adequately object to them. Regardless, we have an independent duty to evaluate the subpoenas

under Rule 17(c), which we do in this opinion. *Vo*, 78 F. Supp. 3d at 176; *United States v. Ellis*, No. 19-369, 2021 WL 210489, at *2 (W.D. Pa. Jan. 21, 2021).

[47] Fed. R. Crim. P. 17(c)(3).

[48] Fed. R. Crim. P. 17(c)(1); *Bowman*, 341 U.S. at 220 ("Rule 17 provided for the usual subpoena ad testificandum and duces tecum, which may be issued by the clerk, with the provision that the court may direct the materials designated in the subpoena duces tecum to be produced at a specified time and place for inspection by the defendant."); *Cuthbertson*, 630 F.2d at 145 ("The fact that **requested material may be evidentiary and subject to subpoena at trial** under *Bowman* does not mean that the party seeking production is automatically entitled to pretrial production and inspection.") (emphasis added); *Hall*, 2021 WL 3419679, at *1; *Vo*, 78 F. Supp. 3d at 178; Wright & Miller, *supra*, § 275.