**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL ACTION |
| | : | |
| v. | : | NO. 21-255 |
| | : | |
| DAVIT DAVITASHVILI | : | |

## <u>ORDER-MEMORANDUM</u>

**AND NOW**, on this 8th day of August 2022, upon considering the United States' August 5, 2022 Motion for clarification of our May 9, 2022 Memorandum and Order (ECF Doc. No. 89), and after today's oral argument where Defendant orally opposed the United States' Motion, it is **ORDERED** the United States' Motion (ECF Doc. No. 89) is **DENIED** as untimely in seeking reconsideration as to the relevant time period and unwarranted as we need not clarify whether Olga Volosevich may testify as to general dysfunction in her marriage in the last year before Defendant's departure including testifying to facts surrounding the Defendant's admissions in text messages to her seemingly relating to conduct which occurred before November 2019, but finding Ms. Volosevich still may not otherwise identify specific physical or emotionally abusive acts before November 2019 including those detailed in the Special Agent's Interview Notes (ECF Doc. No. 89-1).

## *Analysis*

The United States moves for miscellaneous relief including asking us to clarify our May 9, 2022 Memorandum and Order granting in part and denying in part its Motion to admit other acts evidence as intrinsic to the crime or under Federal Rule of Evidence 404(b).[1] We deny its Motion as untimely to the extent it seeks reconsideration of our admissible time frames and as moot because our holding allows Ms. Volosevich to describe her dysfunctional relationship before

November 2019 including when addressing Mr. Davitashvili's admissions of earlier abusive conduct in text messages.

**A. We analyzed all the evidence provided to us leading to our May 9, 2022 Order.**

The United States moved three times to admit evidence under Rule 404(b). We first denied the United States' noncompliant motion because it failed to comply with our Policies.[2] The United States tried again. We again denied the Motion for failing to comply with our Policies and for failing to attach the evidence it sought to admit.[3] It tried again with a compliant Motion and attached 239 pages of text messages which it described as the specific evidence it sought to admit.[4] But the United States also moved to admit testimony from the alleged victim Olga Volosevich.[5] We understood the United States to be seeking admission of Ms. Volosevich's testimony about the context of their relationship, including Mr. Davitashvili's past physical abuse, and a plethora of text messages between Ms. Volosevich and Mr. Davitashvili after Mr. Davitashvili left the United States.[6] The United States did not provide us witness statements Ms. Volosevich made to the Federal Bureau of Investigation agent investigating the case. We only had the United States' truncated summary of past abuse with no timeframe of when the specific acts of abuse occurred except "during their marriage." We ordered a Rule 104 hearing to evaluate Ms. Volosevich's credibility and further understand what exactly she intended to testify to regarding the allegations of past abuse.[7] We ordered the parties timely file a Notice "identifying any witness or document (not already filed) the United States or Defendant intends to introduce" at our Rule 104 preliminary questions evidentiary hearing.[8] The United States identified six categories of evidence, including various text messages and Mr. Davitashvili's 2007 conviction but no witness statement reports.[9] We held the hearing, but the United States declined to call Ms. Volosevich to testify.[10] The United States also did not call the FBI agent to testify as to what Ms. Volosevich informed him during

2

interviews.[11] Following its written submissions and our hearing, we did not know the timeframe of the specific acts of past abuse preceding the charged conduct on May 10, 2020. We merely knew Ms. Volosevich and Mr. Davitashvili's relationship spanned nearly a decade with the two marrying in 2016.

We grouped the United States' proffered evidence into four categories: (1) Ms. Volosevich's testimony regarding Mr. Davitashvili's past abusive conduct and their dysfunctional relationship; an October 2019 alleged rape; a 2007 domestic violence conviction; and the hundreds of messages between Ms. Volosevich and Mr. Davitashvili and Mr. Davitashvili and his friend, Roma.[12] We found Ms. Volosevich's testimony about the background of their relationship, including past abuse and dysfunction, relevant for proper purposes including background and intent.[13] We found the Rule 403 balancing test did not prohibit admitting this evidence to a timeframe close to the charged conduct.[14] But we found "as the conduct becomes more attenuated from the date of the charged conduct, the probative value diminishes, changing the calculus of the Rule 403 balancing test" and therefore limited the testimony "to events occurring close in time to the charged conduct, specifically those from November 2019 through June 2020."[15]

**B.  The United States now adds specific acts never shown to us after several requests.**

The United States now wants us to "clarify" Ms. Volosevich can testify to specific events occurring from November 2018 to June 2020.[16] Both parties knew of this information before the United States moved for admission of certain evidence but did not include the dates or specifics. For the first time the United States attaches an interview summary from the Federal Bureau of Investigation's agent's interview with Ms. Volosevich on June 17, 2021 despite our Order requiring the United States provide us the evidence it sought to admit.[17] The FBI report is littered with new allegations of specific acts of abuse not previously disclosed to the Court, including

allegations Mr. Davitashvili threatened to cut out Ms. Volosevich's insides and things got worse "recently . . . roughly the last year of their marriage."[18] Ms. Volosevich told the agent Mr. Davitashvili was "abusive in every way. He would grab her by her hair; hit her on the head; grab her clothing and arms and start shaking her; and flick his fingers into her head in a strong and forceful way."[19] She informed the agent she would have bruises on her arms, but nothing on her face."[20] She also alleges Mr. Davitashvili stole her iPhone before he left the United States.[21]

### C.  We deny the United States' last-minute motion as untimely and unwarranted.

We deny the Motion to the extent the United States' Motion for clarification is really an untimely motion for reconsideration of the time frame we admitted evidence of *specific facts* of past abusive conduct.[22] The United States is asking us to both reconsider our Rule 403 balancing test *and* to present new specific acts evidence detailed in a previously undisclosed FBI report. The United States represents it did not realize the time frame precluded testimony about the physically abusive conduct occurring while Mr. Davitashvili still lived in the United States. We cannot grant an untimely motion for reconsideration requesting we change our Rule 403 analysis made with the information provided by the United States at the time of our May 9, 2022 Memorandum *and* also admit new allegations of physical abuse contained in the FBI report and not previously disclosed to the Court in performing our precision-laden analysis.

### D.  Ms. Volosevich may testify as to general background and respond to Mr. Davitashvili's admissions.

But our denial of the United States' last-minute attempt to introduce specific acts does not alter Ms. Volosevich's ability to testify as to background. We disagree with the United States' last-minute contention our May 9, 2022 Order excludes all relevant evidence to explain the background of Mr. Davitashvili and Ms. Volosevich's relationship, her delay in going to authorities, and to prove the intent prong of the charged conduct.

We admitted "testimony from Olga Volosevich as to the background of her relationship with the Defendant and as to her firsthand knowledge of the alleged dysfunction in their relationship from November 2019 to June 2020."[23] We of course contemplated this "background" would include things such as when Ms. Volosevich and Mr. Davitashvili met, how they met, when they married, etc., all of which occurred before November 2019. We will also permit Ms. Volosevich to testify as to her perception of their relationship before November 2019, *i.e.* whether she perceived it as good and when she started perceiving it as bad leading up to their separation. This testimony may include her perception of an abusive relationship with Mr. Davitashvili. But Ms. Volosevich is not permitted to testify as to the specific acts of abuse if they did not occur within the November 2019 to June 2020 timeframe consistent with our May 9, 2022 Order.[24]  For example (and as illustration only), Ms. Volosevich cannot testify Mr. Davitashvili physically abused her on November 8, 2018 by punching her in the arm. We excluded such testimony.

But Ms. Volosevich can testify to describe the background to Mr. Davitashvili's admissions in admitted text messages. We admitted, for example, a text message exchange from December 31, 2019 where Ms. Volosevich recounted past instances of abuse against her and Mr. Davitashvili responded to her by saying he was not himself, he regretted it, he needed treatment, and he would return back to the United States healthy.[25] We admitted this message exchange because Mr. Davitashvili's responses could reasonably be viewed as an admission of past abusive conduct.[26] His admissions held probative value. Ms. Volosevich can surely explain to the jury the context of this message referencing conduct perhaps outside of the November 2019 to June 2020 timeframe, again not because *she* stated the conduct occurred, but because *he* arguably admits it did. Mr. Davitashvili's admissions give credence to Ms. Volosevich's perception of an abusive

relationship. We also admitted extensive messages of verbally abusive conduct in our May 9, 2022 reasoning which occurred in the admissible timeframe.[27]

### E.  Conclusion

We must deny the United States' Motion to the extent it asks us to reconsider our prior holding of the time frame of admissible evidence following our precision-laden analysis including the Rule 403 balancing test where we found attenuated conduct from the charged act becomes unfairly prejudicial to Mr. Davitashvili and outweighs the probative value. We made our findings based on the information the United States offered us, which evidently did not include relevant FBI reports detailing for the first time a limited time frame of past physical abuse from November 2018 to November 2019. We must deny the United States' request for a redo as untimely but write to again remind the parties of the scope of Ms. Volosevich's testimony.

KEARNEY, J.

---

[1] ECF Doc. No. 89; *see also* ECF Doc. Nos. 79–80 (Memorandum and Order).

[2] ECF Doc. No. 37.

[3] ECF Doc. No. 42.

[4] ECF Doc. Nos. 43–44.

[5] ECF Doc. No. 43 at 6 ("Davitashvili was verbally and physically abusive to O.V. while they were married. He was a former professional mixed martial artist fighter who would hit her in parts of her body where the marks would not be visible to others. He told her that he could kill her with one strike of his hand or foot, and also told her that he had a gun for her and threatened to disfigure her face with acid or a knife.").

[6] *Id.*; *see also* ECF Doc. No. 44.

[7] ECF Doc. No. 50; 56.

[8] ECF Doc. No. 50.

[9] ECF Doc. No. 65.

[10] *See, e.g.*, ECF Doc. Nos. 67; ECF Doc. No. 69, Transcript (Tr.), April 13, 2022, at 33:14–34:9.

[11] *See, e.g.*, ECF Doc. No. 69, Tr., April 13, 2022.

[12] ECF Doc. No. 79.

[13] ECF Doc. No. 79 at 12–13.

[14] *Id.* at 13.

[15] *Id.*

[16] ECF Doc. No. 89.

[17] ECF Doc. Nos. 42, 50 (Order requiring "each party . . . [to] filed a Notice identifying any witness or document (not already filed) . . . [it] intends to introduce during our April 7, 2022 hearing"); 65 (United States notice identifying six categories of documents, including 2007 certified conviction, none of which include FBI interview summaries); 89-1 (the FBI interview summary).

[18] *Id.* at 2.

[19] *Id.*

[20] *Id.*

[21] *Id.*

[22] L.C.R. 1.2 (incorporating L.R. Civ. P. 7.1(g) requiring motions for reconsideration be filed within fourteen days).

[23] ECF Doc. No. 80 ¶ 1.

[24] ECF Doc. No. 80.

[25] ECF Doc. No. 79 at 24–25 (admitting messages from December 31, 2019).

[26] *Id.*

[27] *See, e.g.*, *id.* at 25–26 (admitting January 2020 messages).